IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHRISTOPHER TEMPLE,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

Case No. 3:13-cv-01246-CL

FINDINGS AND RECOMMENDATION

CLARKE, Magistrate Judge:

Christopher Temple ("plaintiff") brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision should be affirmed and this case dismissed.

## PROCEDURAL BACKGROUND

On March 2, 2010, plaintiff applied for DIB. Tr. 28, 196-99. His application was denied initially and upon reconsideration. Tr. 28, 143-54. On April 18, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 46-83. On May 24, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 28-41. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

## STATEMENT OF FACTS

Born on January 17, 1963, plaintiff was 46 years old on the alleged onset date of disability and 49 years old at the time of the hearing. Tr. 39, 53, 196. He graduated from high school and obtained military training. Tr. 54, 213. Plaintiff sustained head and other serious injuries during a motor vehicle accident in 1985. Tr. 320, 512. He has past relevant work as a mechanic. Tr. 78, 215. Plaintiff alleges disability as of August 5, 2009, due to depression, posttraumatic stress disorder ("PTSD"), back and neck pain, insomnia, and memory problems.[1] Tr. 196, 213.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

[1] Plaintiff previously applied for DIB based on similar impairments, alleging disability as of June 30, 2006, the date on which he stopped working. Tr. 87, 89-90, 213. On August 4, 2009, the ALJ issued a decision finding him not disabled. Tr. 87-96. Plaintiff therefore relies on the existence of new and material evidence to overcome the presumption of continuing non-disability. *See* Tr. 52.

2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national and local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity "during the period from his alleged onset date of August 5, 2009 through his date last insured of December 31, 2011." Tr. 30. At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease, anxiety disorder, and PTSD. *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to "perform less than a full range of light work" as defined in 20 C.F.R. § 404.1567(b):

> [h]e could lift and carry 10 pounds frequently and 20 pounds occasionally, sit for eight of eight hours, and stand and walk for eight of eight hours. He could occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He could occasionally crawl and reach overhead bilaterally. He could remember, understand, and carry out simple and detailed but not complex tasks and instructions typical of occupations with an SVP of one or two. He could work in an environment that has only simple work-related decisions with few if any workplace changes. He needed to avoid exposure to unprotected heights and dangerous machinery and other such hazards. He could not interact with the general public or work in close proximity to others, engage in teamwork, or work side by side with coworkers.

Tr. 32.

At step four, the ALJ found that plaintiff could not perform his past relevant work. Tr. 39. At step five, based on the VE's testimony, the ALJ determined that jobs existed in significant numbers in the national and local economy that plaintiff could perform despite his impairments, such as small products assembler, laundry folder, and cafeteria attendant. Tr. 40. As such, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 41.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding him not fully credible; (2) improperly assessing the medical opinion evidence from Celene Andersen, M.D., and Todd Eisenberg, M.D.; and (3) formulating an incomplete RFC, such that the step five finding was invalid.

I. Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting his subjective symptom statements concerning the extent and severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that the primary reason he cannot work is because his depression and short-term memory problems. Tr. 53, 56, 70. He also reported suicidal ideation, anxiety in crowds, and pain in his neck, back, and knees. Tr. 57, 65, 69-70. Although plaintiff admitted that he was not taking any medication for his physical impairments, he did endorse using an anti-depressant, which helped with his mood and irritability, but not his sadness. Tr. 57-59. As for activities of daily living, plaintiff stated that he takes care of his dog, showers, does minimal household chores, goes grocery shopping, cooks, and watches television. Tr. 60-63. In addition, plaintiff reported playing video games with his fifteen year old son, for "up to a couple of hours straight" on weekends, and helping his friend with things at his auto repair shop anywhere from "once a month" to "a couple times a week." Tr. 59-62.

After summarizing his hearing testimony, the ALJ found that plaintiff's medically

determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not fully credible due to his activities of daily living, failure to comply with his doctors' recommendations, history of conservative treatment, and ability to work for several years with the same allegedly disabling conditions, as well as the lack of corroborating objective medical evidence. Tr. 32-36.

Notably, the ALJ found that plaintiff's "functional limitations were not as significant and limiting as alleged" because "his daily activities were quite involved." Tr. 36. Daily activities may serve as a basis for discrediting a claimant where they "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The record reveals that plaintiff takes care of his two children, is independent in his self-care, cooks, cleans, does laundry and dishes, socializes with friends and family, shops in stores, cares for his pet dog, drives, watches television, uses the internet, and plays video games. Tr. 36, 61-63, 72, 75-77, 231-35, 239-43, 513, 520, 555. Further, plaintiff "often helped his friend with things at his auto repair shop" and "stated that he would like to go fishing but could not afford it." Tr. 36, 59-60, 520, 616. Thus, as the ALJ reasonably concluded, plaintiff's daily activities contradict his hearing statements and evince the ability to perform a modified range of light work with appropriate non-exertional limitations.[2] While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

The ALJ also resolved that plaintiff "did not fully comply with medical treatment" and "received only conservative and routine treatment." Tr. 36. Failure to seek or follow medical treatment is a clear and convincing reason to reject a claimant's subjective statements. *Burch*, 400 F.3d at 681. Nevertheless, before drawing a negative inference, the ALJ must consider "any

---

[2] While not dispositive, the Court notes that, after listening to the VE's testimony at the hearing, plaintiff stated that he thought he would experience "high anxiety" as a cafeteria attendant and physically have trouble with the representative occupation of laundry folder; however, he did not object to the position of small products assembler. Tr. 80-82.

explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, *available at* 1996 WL 374186. Here, as the ALJ observed, "[d]espite reporting reduced mental health symptoms with Buproprion, [plaintiff] did not take this medication as prescribed" and he "did not require physical therapy, surgery, or consistent pain medication to treat his degenerative disc disease." Tr. 36, 57, 561, 568, 621, 627. Moreover, plaintiff repeatedly declined his doctors' referrals to weight loss programs, vocational rehabilitation, and psychotherapy. *See, e.g.*, Tr. 558, 562, 572-73, 594, 597, 613, 615, 621, 634. Indeed, plaintiff's lack of financial resources - i.e. a situational stressor, as opposed to an organic physical or mental impairment - appears to be a motivating factor behind his disability claim. *See* Tr. 75 (in response to a question from the ALJ regarding "what steps [he's] willing to take" to improve his depression, plaintiff remarked that "if you approve my case today, then it would provide me with a - you know, enough additional income . . . to afford fishing and things like that"), 561 (plaintiff reporting in September 2010 "that the source of his ongoing dysphoric mood is his lack of finances [and he] states that if his [DIB] benefits come through, he expects his mood to improve dramatically"), 621 (plaintiff "attribut[ing] his chronic dysphoria largely to not having enough money to engage in normally enjoyable activities of life" in October 2011).[3]

Plaintiff does not now proffer a reason, finance-related or otherwise, for his failure to obtain services or follow his doctors' recommendations. *See generally* Pl.'s Opening Br.; Pl.'s Reply Br. He testified at the hearing, however, that he previously initiated contact with vocational rehabilitation but "they didn't feel there was anything they could do" because "of my memory issues and questions we were going through." Tr. 60. Yet this explanation conflicts with the record. Significantly, there is no other mention of plaintiff pursing such services and his most recent

[3] Although less probative because this evidence falls outside of the relevant adjudication period, plaintiff stated in February 2008 "that he is not currently 'ready to feel better' because he is pursuing VA disability and Social Security disability benefits. He elaborated that these benefits are contingent on his continuing to be depressed." Tr. 374; *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (evidence of self-limiting behavior or a lack of motivation can serve as a basis for discrediting a claimant's testimony).

treatment notes, from January 2012, reflect that he continued to decline his doctor's referral. Tr. 594. Regardless, even accepting plaintiff's assertion, substantial evidence nonetheless supports the ALJ's conclusion regarding his failure to seek and follow treatment.

Accordingly, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2007). The ALJ's credibility finding should be affirmed.

II. Medical Opinion Evidence

Plaintiff next contends that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discrediting the medical opinions of Drs. Andersen and Eisenberg. There are three types of medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

A. Dr. Andersen

On March 30, 2012, Dr. Andersen completed a one-page check-the-box form, on which she listed plaintiff's "subjective symptoms" as "memory loss, depression, anxiety." Tr. 645. The form also contained a section for "objective findings," which were defined as "surgery, x-ray, electrocardiograms, or other special tests"; under that section, the doctor wrote "depression, cognitive dysfunction secondary to traumatic brain injury." *Id.* Dr. Anderson diagnosed plaintiff with cognitive dysfunction due to a traumatic brain injury, depression, and anxiety. *Id.* She reported that plaintiff first initiated care with her in September 2010 but "was followed by mental health." *Id.* Because the record contains a dearth of her chart notes, it is unclear how frequently plaintiff received

treatment directly from Dr. Anderson.[4] In any event, in the "extent of disability section," the doctor checked boxes indicating that plaintiff is "now totally disabled" from any occupation. *Id.* Although the latter half of this one-page form was left blank for "remarks," Dr. Andersen did not provide any additional information. *Id.*

The ALJ afforded "limited weight" to Dr. Andersen's opinion because: (1) "it is not consistent with the record"; (2) "[t]he doctor does not reconcile her conclusion with [plaintiff's] ability to raise two children, care for a dog, prepare meals, perform personal care, socialize, play computer games, drive an automobile, perform housework, and shop"; (3) "[s]he does not persuasively explain how [plaintiff's] conditions result in a purported inability to work" and "her conclusory opinion is on an issue specifically reserved under the Regulations for the Commissioner"; and (4) "[i]t does not provide specific functional limitation[s] tied to objective finding that would prove useful in determining [the RFC]." Tr. 37-38.

An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also Boucher v. Colvin*, 2013 WL 3778891, *2-3 (W.D.Wash. July 18, 2013) ("while post-[date last insured] evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective") (citations omitted). Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition). Additionally, it is well-established that an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references

---

[4] The Court acknowledges that the record contains several chart notes that refer to Dr. Andersen as plaintiff's primary care physician. *See, e.g.*, Tr. 583-86. Nevertheless, both plaintiff and the Court could only locate a few treatment records that she signed or otherwise authored. *See* Pl.'s Opening Br. 10-11; Tr. 627-30, 643.

to clinical findings. *Thomas*, 278 F.3d at 957; *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions").

An independent review of Dr. Andersen's report confirms the absence of any named mental or physical limitations, such as the inability to concentrate or to lift, stoop, walk, or stand. Her assessment is also conclusory; the only narrative descriptions are brief and make no reference to the doctor's own chart notes or any other evidence. This is likely because the doctor's records do not explain her disability opinion. *See* Tr. 627-30, 643 (records from Dr. Andersen reflecting that she reviewed plaintiff's medication list, conducted a clinical exam yielding normal results, and documented his report that he "has not been taking the buproprion in a regular basis and has not been following with [mental health, although he is] [n]ot hopeless and [has] no [suicidal ideation] but depression is still present"). Indeed, in the "objective findings" section, the doctor seemingly recapitulated plaintiff's subjective reports, despite the form's express instructions to the contrary. Thus, Dr. Andersen merely opines as to plaintiff's underlying conditions, after the date last insured, and then resolves that plaintiff is "now totally disabled," without offering any explanation or a retrospective analysis. Tr. 645. The ALJ provided legally sufficient reasons, supported by substantial evidence, for rejecting the evaluation of Dr. Andersen.

Finally, to the extent he contends that Dr. Andersen's opinion should be fully credited because it is not contradicted by the record and consistent with the reports of Dr. Eisenberg, Donald Ramsthel, M.D., and Luke Patrick, Ph.D., plaintiff's argument is unavailing. Initially, outside of Dr. Andersen, no doctor has opined that plaintiff is disabled and the other evidence of record demonstrates that he is capable of performing a limited range of light work. *See, e.g.*, Tr. 102-130, 569-72, 574. Further, as discussed in greater detail below, the ALJ properly discredited Dr. Eisenberg's report and, in any event, the functional limitations he assessed are largely reflected in the RFC. Turning to Dr. Ramsthel, he examined plaintiff once in June 2010 and assessed the following functional limitations: plaintiff could stand or walk for four hours and sit for six hours in

an eight hour workday, plaintiff could lift 30 to 40 frequently, and plaintiff was unlimited in his ability to hear, speak, handle objects, and travel. Tr. 512-16. Dr. Ramsthel's assessment pertained solely to plaintiff's physical limitations, whereas Dr. Andersen's opinion was based on plaintiff's mental impairments. *Compare id.*, *with* Tr. 645. Unlike Dr. Andersen, Dr. Ramsthel did not opine that plaintiff was disabled. For these reasons, Dr. Ramsthel's report does not lend support to or otherwise corroborate Dr. Andersen's opinion.

Dr. Patrick performed a one-time "Psychodiagnostic Evaluation" on plaintiff in September 2010. Tr. 519-22. After interviewing plaintiff and reviewing certain medical records, Dr. Patrick diagnosed plaintiff with "[m]ajor depressive disorder, mild to moderate"; "[h]istory of PTSD, with symptoms recently well-controlled"; "[r]ule out dementia associated with traumatic brain injury"; and "[p]er client report and available records: [c]hronic arthritis pain." Tr. 521. However, the doctor did not articulate any functional limitations, explaining that, although plaintiff stated that "his alleged memory and cognitive problems" are his greatest barriers to employment and "today's mental status screening was suggestive of short-term memory problems, the extent and nature of such problems could not be assessed with brief screening [such that] any records of prior cognitive testing should be given consideration in determining his eligibility for benefits." *Id.* The record contains one previous cognitive assessment from John Crossen, Ph.D., dated April 2010; plaintiff's objective test results were all within the average range, except in the category of "new learning and memory." Tr. 569-74. Nonetheless, Dr. Crossen reported there "were no indications of problems" with "simple attention and concentration processes" and "more complex tests requiring attention." Tr. 572. He also noted that plaintiff's "moderate cognitive deficits in his memory functioning . . . have not precluded gainful employment for many years. What has more seriously hampered his occupational functioning and threatened his life on at least one occasion, if not two, has been alcohol abuse in the context of depressive episodes during stressful events." *Id.* As such, neither Dr. Patrick nor Dr. Crossen, the only two examining or treating psychological specialists, reported that plaintiff was

limited by his mental impairments to the extent indicted by Dr. Andersen.[5] Therefore, the ALJ's decision should be upheld as to this issue.

B. Dr. Eisenberg

On April 16, 2012, Dr. Eisenberg filled out disability paperwork prepared by plaintiff's attorney. Tr. 646-49. The doctor indicated that he had been plaintiff's mental health provider for 18 months and had furnished services to him on four occasions. Tr. 646. He listed plaintiff's "current" diagnoses as "[m]ajor depressive disorder" and "[a]lcohol abuse in remission," which resulted in symptoms of "[d]epressed mood, decreased appetite, insomnia, poor concentration, decreased interest, [and] low energy." *Id.* He reported that these conditions existed "on or before 12/31/2011," the date last insured. Tr. 649. According to Dr. Eisenberg, plaintiff was not limited in activities of daily living, extremely limited in social functioning, and markedly limited in concentration, persistence, or pace. Tr. 647. Dr. Eisenberg remarked that plaintiff would miss at least two full workdays per month, although he was unable to provide an opinion as to plaintiff's ability to handle workplace stress as plaintiff "has not been working." Tr. 647, 649. On an accompanying RFC assessment form, Dr. Eisenberg checked boxes reflecting no or minimal restrictions in social interaction and adaptation, except in regard to plaintiff's ability to interact appropriately with the general public. Tr. 648-49. In sustained concentration and memory, the doctor signified plaintiff would undergo limitations that would "[p]reclude performance" for ten to fifteen percent of a 40-hour workweek. Tr. 648.

The ALJ gave Dr. Eisenberg's opinion "some weight." Tr. 38. Namely, the ALJ found that the functional limitations assessed by Dr. Eisenberg were "generally consistent with the record as a whole." *Id.* However, the ALJ rejected the portions of Dr. Eisenberg's opinion there were contravened by the objective medical evidence and plaintiff's activities of daily living. *Id.* Inconsistency with the evidence of record is a legally sufficient reason for rejecting a doctor's

---

[5] Plaintiff does not challenge the ALJ's assessment of Dr. Patrick's, Dr. Crossen's, or Dr. Ramsthel's opinion on appeal. *See generally* Pl.'s Opening Br.; Pl.'s Reply Br.

opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040-41 (9th Cir. 2008).

Here, the Court finds that the ALJ credited the majority concrete limitations identified by Dr. Eisenberg and incorporated them into the RFC. Tr. 38; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,1222-23 (9th Cir. 2010) (affirming the RFC finding where the ALJ did not exclude any specific limitations listed by the claimant's doctor). Critically, the ALJ limited plaintiff to work involving: no workplace hazards, "simple and detailed but not complex tasks and instructions typical of occupations with an SVP of one or two," "simple work-related decisions with few if any workplace changes," no public contact, and no teamwork, close proximity work, or "side by side" work with coworkers.[6] Tr. 32. To the extent the ALJ rejected the doctor's report, substantial evidence supports that conclusion. For instance, although Dr. Eisenberg checked a box reflecting that plaintiff was extremely limited in social functioning, he did not assess any corresponding restrictions on the RFC form beyond already articulated in the RFC. *Compare* Tr. 647, *with* Tr. 32, 648. Furthermore, plaintiff's own statements demonstrate that, while he experiences anxiety with crowds, he socializes regularly with friends and family, and has no problem leaving the house to shop, help his friend at his mechanic business, attend doctors' appointments, or accompany his children to events. Tr. 59-60, 62, 65, 76, 231-35, 239-43, 513, 520, 555, 616. In addition, as noted above, plaintiff's daily activities, as well as medical evidence from Dr. Crossen, Dr. Patrick, and the state agency consulting sources, establishes that he is capable of completing a full workweek and performing simple and routine tasks on a sustained basis despite any deficits in concentration, persistence, or pace.

---

[6] Plaintiff disputes that these restrictions sufficiently account for the marked and extreme limitations assessed by Dr. Eisenberg. The Court disagrees. The terms mild, moderate, marked, and extreme do "not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment [because they do] not inherently translate to a concrete functional limitation." *Brink v. Astrue*, 2013 WL 1785803, *5 (D.Or. Apr. 24, 2013) (collecting cases); *see also* SSR 96-8p, *available at* 1996 WL 374184; *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed.Appx. 15, 17–18 (9th Cir. 2012). Rather, "the dispositive inquiry is whether the ALJ's RFC assessment is supported by substantial evidence" and "consistent with the restrictions identified in the medical testimony." *Brink*, 2013 WL 1785803 at *5 (citation and internal quotations omitted). As discussed herein, the ALJ's RFC is congruous with the medical and other evidence of record. *See Davis v. Colvin*, 2014 WL 2611346, *9-10 (D.Or. June 11, 2014) (affirming the ALJ's decision under analogous circumstances).

In sum, in formulating plaintiff's RFC, the ALJ accepted Dr. Eisenberg's opinion to the extent it was consistent with the record and not based solely on plaintiff's discredited self-reports. Thus, the ALJ set forth legally sufficient reasons, supported by substantial evidence, for afforded less weight to Dr. Eisenberg's report. The ALJ's assessment of the medical opinion evidence should be affirmed.

III. RFC Assessment and Step Five Finding

Lastly, plaintiff argues that the ALJ's RFC and step five finding are erroneous because they do not account for limitations set forth in his testimony or the opinions of Drs. Andersen and Eisenberg. The RFC is the maximum a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163-65.

As discussed above, the ALJ properly discredited plaintiff, Dr. Andersen, and Dr. Eisenberg. There is no indication, outside of this evidence, that plaintiff suffers from functional limitations beyond those outlined in the RFC. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. *Bayliss*, 427 F.3d at 1217-18; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). The ALJ's RFC and step five finding should therefore be upheld.

**RECOMMENDATION**

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case is DISMISSED.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the

right to appeal the District Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

Dated this 11 day of August 2014.

Mark D. Clarke
United States Magistrate Judge